STATE of Tennessee, Appellee,

v.

Bruce E. HORNE, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 11, 1983.

Permission to Appeal Denied by Supreme Court April 4, 1983.

William M. Leech, Jr., Atty. Gen., Steven A. Hart, Asst. Atty. Gen., Nashville, H. Greeley Wells, Asst. Dist. Atty. Gen., Blountville, for appellee.

Wendal D. Jackson, Bristol, for appellant.

## OPINION

O'BRIEN, Judge.

The Grand Jury of Sullivan County returned a presentment against defendant charging him with two counts of aggravated assault. The trial jury found him guilty of assault and battery on the first count of the presentment and acquitted him on the second. His punishment was fixed at imprisonment in the County Jail for a term of four months. Defendant's request for suspension of sentence was denied.

We note at the outset that counsel has prayed the court's indulgence in not following the Rules of Appellate Procedure for the order and the content of his brief. The Rules were drawn for the explicit purpose of securing the just, speedy, and inexpensive determination of trial proceedings on their merits. To deviate from the prescribed procedure serves no useful purpose and tends to hinder the court in its function. We adjure counsel not to attempt to improve on the rules without the express approval of the Court.

Two issues are raised relative to the sufficiency of the evidence to find defendant guilty of assault and battery. The circumstances leading to his trial and conviction occurred on October 17, 1980 in the City of Bristol. This twenty-eight year old defendant had been out driving with his wife on the evening in question. According to his testimony, quite by accident, he was caught up and surrounded by a crowd emerging from the local high school football stadium at the conclusion of a football game. He was endeavoring to drive cautiously through the crowd surrounding his vehicle when someone shouted, "You hit my wife". According to defendant's version, in fear that he might accidentally have hit someone, he stopped the car, and backed up a very short distance. He was not aware that the back end of his vehicle came in contact with anyone at that time. The shouting, cursing, and pounding on his car increased in volume. He saw his way clear to proceed forward and endeavored to do so. It appeared to him that someone jumped on the hood of his car. His wife began crying and was on the verge of hysteria. When he cleared the crowd he speeded up and drove away for a short distance where he stopped until he could calm his nerves sufficiently to drive home.

His wife generally corroborated his story but said that after they had backed up to see if they had hit anyone they proceeded slowly forward. They came upon a man who had his back to the car. Her husband stopped then blew the horn to get his attention. The man turned around jumped upon the hood of the car and began beating on it. She says she was completely hysterical and urged him to hurry and get out.

Mr. Harold Peerman, who was the person backed into, says there was a solid mass of people exiting from the stadium. He was moving along in the crowd when defendant's vehicle came up behind him, moving slowly. The crowd endeavored to get out of the way of the vehicle. Mr. Peerman moved over to the left and after the car passed stepped in behind it. He saw, or heard, someone on the right hand side of the car begin to beat on the car top and scream at the driver, "Stop, stop, stop this man, he hit my wife back there". The driver put the car in reverse and Mr. Peerman was unable to move out of the way in time. He was knocked down. His trousers were torn and he suffered abrasions to his knee and elbow. The car then moved forward again.

Mr. Ronald Rogers testified he was leaving the football game and walking down the alleyway in the crowd where the incident occurred. He felt something touch the back of his legs, looked down and saw the

headlights of a vehicle. As he started to look around the car hit the back of his legs and he sat down on the front of the hood. He had an umbrella in his hand with which he beat on the hood of the car, and he shouted. At this time the vehicle speeded up and threw him backward. He did a flip backward off the right side of the car. He received emergency room treatment at a hospital and lost a day or two from work as the result of his injuries. He required medical attention for several months.

The jury acquitted defendant of the charges involving the injuries sustained by Mr. Peerman. They found defendant guilty of assault and battery under the charge and the presentment involving the injuries to Mr. Rogers. In *Saunders v. State,* 345 S.W.2d 899, 208 Tenn. 347, (1961), our Supreme Court said:

"The basic contention on this appeal is that there is no evidence of any intent to do injury. The intent necessary to constitute assault and battery is either an express desire upon the part of the accused to inflict the injury or it can be supplied as a matter of law from doing an act in such a reckless and wanton manner that the natural and probable results thereof will be to inflict an injury. The factual situation as presented in each case is a question for the jury to determine whether or not there is either an express desire, or from the acts within themselves the intent is shown."

Other witnesses who were in the crowd say they did not hear the horn on defendant's vehicle blow. One of these, Mr. Timothy Cox, testified he was in front of Mr. Rogers in the crowd. He heard people screaming and observed Mr. Rogers hit the roadway. The defendant's vehicle proceeded quite rapidly toward him and he had to pull his wife out of the way to keep her from being run down. He caught up with the car, beat on the windows, and screamed loudly that the driver had run over somebody. Defendant looked him in the eye and kept going.

The evidence in this case was undoubtedly sufficient to warrant the jury's verdict against defendant. The discrepancies in the evidence and conflicts in the testimony have been resolved by their verdict. It is their function to resolve those conflicts, to weigh the evidence, and to draw reasonable inferences from that evidence in reaching their verdict. Once a defendant has been found guilty at trial, upon judicial review, all of the evidence is to be considered in the light most favorable to the prosecution. Findings of guilt in criminal actions shall be set aside only if the evidence is insufficient to support the findings of guilt by the trier of fact beyond a reasonable doubt. *State v. Smith,* 626 S.W.2d 283 (Tenn.Cr.App.1981).

Defendant says that the trial court erred in excluding evidence of a civil suit for damages filed by Mr. Rogers against him.

Neither counsel have been able to provide us with any authority in this State on the issue. On cross-examination of Mr. Rogers, defense counsel asked if a civil suit had not been filed against defendant. The trial judge ruled that this information was not relevant, directed the jury to disregard it, and had a somewhat heated exchange with counsel about his endeavor to introduce the evidence. The court held that there was no connection between the verdict of a jury in a criminal case when the plea is not-guilty, and in the verdict in a civil case. He ruled that the only purpose for an attempt to admit such evidence would be to inflame the jury. We respectfully disagree with the trial judge. Our appellate courts have held consistently that great latitude is allowed in cross-examination, particularly cross-examinations showing the witness' interest or bias. *Union Traction Company v. Todd,* 64 S.W.2d 26, 16 Tenn. 200 (1933). In civil cases, it is said that the right to show bias or prejudice should only be limited in extraordinary circumstances. *Phillips v. Pitts,* 602 S.W.2d 246 (Tenn.App.1980). In *Bouchard v. State,* 554 S.W.2d 654 (Tenn.Cr.App.1977), this

Court held that a criminal defendant is entitled to cross-examine State's witnesses to show possible bias due to promises of leniency by the State. The text writers seem to be in accord that for the purpose of showing interest, or bias, a witness for the prosecution in a criminal case may be questioned as to whether he has brought an action against the accused, based on the acts involved in the criminal case. See C.J.S., Vol. 98, Witnesses, Sec. 560; Wharton's Criminal Evidence, 13th Edition, Torcia, Sec. 436; McCormick's Law of Evidence, Chapter 5, Sec. 40. However, in the final analysis improper admission or rejection of evidence is not grounds for reversal unless it shall affirmatively appear that the alleged error affected the result of the trial. See *McBee v. State,* 372 S.W.2d 173, 213 Tenn. 15 (1963). We believe the trial judge should have admitted the evidence, but, considering the whole record, we do not believe his failure to do so resulted in reversible error. T.R.A.P. Rule 36(b). The jury in this case dismissed one of the charges against the defendant and declined to find him guilty of any offense greater than assault and battery on the other count of the presentment. Any error was harmless.

The remaining issue applies to denial of probation.

■ The power of suspension of sentencing and probation lies within the sole discretion of the trial judge and the burden of proof is upon a defendant to specifically show that he is entitled to probation. T.C.A. § 40–2904; *State v. Ricker,* 611 S.W.2d 839 (Tenn.Cr.App.1980). The decision of the trial judge in such matters is presumed to be correct and not reversible on appeal unless a defendant shows the trial judge's action was capricious, arbitrary, or palpably abusive of his discretion. See *State v. Grear,* 568 S.W.2d 285 (Tenn. 1978).

■ In this case the trial judge considered the circumstances and nature of the offense, the defendant's prior arrest record, his apparent lack of remorse, defendant's social history, and his present mental attitude. There was little testimony at the probation hearing and the trial judge relied extensively on the probation report which was available to him in making his determination to deny probation. The record clearly supports the conclusion that probation should be denied.

WALKER, P.J., and DWYER, J., concur.