IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 13, 2000 Session

**STATE OF TENNESSEE v. MICHAEL S. NEVENS**

**Appeal from the Circuit Court for Williamson County**
**No. II-74-599     Timothy L. Easter, Judge**

_____

**No. M2000-00815-CCA-R3-CD  - Filed April 27, 2001**

_____

The defendant appeals from his conviction for theft of a bottle of tea, contesting the jury instructions, the effectiveness of his trial counsel, the state's cross-examination of defense witnesses, the state's closing argument and the trial court's failure to rule upon a subsequent objection, and his sentence. Because the trial court erred in instructing the jury, we reverse the defendant's conviction and remand the case to the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

David L. Raybin, Nashville, Tennessee, for the appellant, Michael S. Nevens.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek Keith Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Michael S. Nevens, appeals as of right from his conviction by a Williamson County jury for theft of property valued five hundred dollars or less, a Class A misdemeanor. The trial court sentenced the defendant to eleven months, twenty-nine days at seventy-five percent, ordering the sentence to be suspended and served on probation except for seven days. The conditions of the defendant's probation included performing fifty hours of community service, being subjected to random drug screens, and staying out of all Kroger stores. The defendant contends that (1) the trial court erred by failing to instruct the jury on the defense of mistake of fact, (2) he received the ineffective assistance of counsel because his counsel did not make a special request for an instruction on the mistake of fact defense, (3) the state improperly cross-examined him and his mother about the possibility of filing a civil suit against Kroger, (4) the state improperly referred to

the grand jury during its closing argument and the trial court failed to rule upon his objection to such argument, ordering his counsel to sit down, and (5) his sentence of seven days of incarceration is excessive.

This case concerns a bottle of tea in a Kroger store. At trial, Officer Larry Campbell of the Brentwood Police Department testified as follows: On February 6, 1999, he was off duty and working at Kroger in plain clothes to detect shoplifting. He saw the defendant and a female, whom he later discovered to be the defendant's mother, drinking NesTeas as they shopped. He noticed that the defendant appeared nervous and kept looking around. While he was in the shampoo aisle with the defendant and the defendant's mother, the defendant's mother leaned down to look at a product, at which point the defendant glanced in each direction, finished his tea, placed the lid on the tea, looked around again, and then placed the tea bottle on the back of a shelf. The defendant then got a jar of jelly from the grocery cart and placed the jar on the shelf, hiding the tea bottle.

Officer Campbell testified that the defendant and his mother walked toward the cash registers but that the defendant then left his mother and walked toward the shampoo aisle. He said that before the defendant got to the aisle, the defendant stopped, looked around, and then walked toward the exit through an opening between the cash registers and a banking area. The defendant met his mother, who had gone through a check-out lane, and they left the store. Officer Campbell testified that he retrieved the tea bottle and jar of jelly from the shelf and that he and the store manager, Mr. Bunch, went outside the store and approached the defendant and his mother. He asked the defendant's mother if the defendant was her son, and when she responded that he was, he told her that the defendant drank a tea and did not pay for it. She looked at the defendant, and the defendant said, "I was going to pay for it." Officer Campbell then said, "But you didn't pay for it. You hid it in the aisle back here," to which the defendant stated again that he was going to pay for it. He then asked the defendant to come inside the store to talk.

Officer Campbell testified that Mr. Bunch took the Nevens' groceries to the cooler and that he, Mr. Bunch, the defendant, and the defendant's mother went to an office on the second floor, where the defendant and his mother became argumentative. He stated that he took the defendant into an adjacent room, leaving the door connecting it to the office open, and that the defendant signed a citation. Officer Campbell said that he then completed a Kroger incident report, in which he wrote that the defendant said that he was going to pay for the tea. Although the defendant had agreed to sign the incident report, his mother came into the room, took the report from the defendant, and said that she did not agree with its contents. The defendant then refused to sign the report. Officer Campbell testified that the defendant never said that his mother was supposed to pay for the tea.

On cross-examination, Officer Campbell testified that when he confronted the defendant and his mother, he did not know where they had gotten the teas or whether the mother had paid for them, admitting that he did not know what the defendant's mother said to the cashier when she paid for the groceries. He stated that he admitted at the preliminary hearing that it was possible that the defendant had asked his mother why she did not pay for the tea. He acknowledged that neither the incident report nor his preliminary hearing testimony mentioned that the defendant appeared nervous

while shopping. He stated that when they were in the office, the defendant's mother gave the grocery receipt to Mr. Bunch, and Mr. Bunch refused to give the receipt back to her.

Richard Jason Bunch testified as follows: On February 6, 1999, while working as an assistant manager at Kroger in Brentwood, Officer Campbell told him that he had seen a person, later determined to be the defendant, drink a bottle of NesTea and then hide it on a shelf. Officer Campbell said that he was going to stop the defendant when the defendant left the store and asked him to witness the stop. Mr. Bunch saw the defendant's mother, Ms. Nevens, pay for her groceries and then meet the defendant, who did not go through the check-out lane, near the exit. Officer Campbell stopped the defendant and his mother after they left the store and asked them to talk with him inside the store. Mr. Bunch did not remember what Officer Campbell or the defendant said outside the store but recalled that the defendant and Ms. Nevens were upset. He, Officer Campbell, Ms. Nevens, and the defendant went to a second-floor office, where the defendant and Ms. Nevens became very upset, rude, and loud. Ms. Nevens said that she had gotten the teas and paid for the groceries, so if anyone were to be arrested, it should be her. At some point, Ms. Nevens got the grocery receipt from the defendant and gave it to him. The receipt indicated that only one NesTea was purchased. Ms. Nevens asked him to give her the receipt back, but he refused because he had given Ms. Nevens, upon her request, a refund for her groceries. He also refused to give her a copy of the receipt. He said that he did not remember hearing the defendant say that his mother was supposed to pay for the tea. On cross-examination, Mr. Bunch stated that it was possible that Ms. Nevens told him to look at the receipt to determine whether she had paid for two NesTeas.

Mike Tidwell testified that he was working as a cashier at the Brentwood Kroger on February 6, 1999, and that Ms. Nevens, who was a regular customer, paid him for her groceries. He stated that it was common for customers to eat or drink something while shopping, leave the package in their cart, and pay for the item when they checked out. He said that Ms. Nevens was talking to a friend in the check-out lane while he scanned her groceries, including one empty bottle of tea. He testified that he was absolutely positive that Ms. Nevens did not tell him to charge her for two teas. On cross-examination, Mr. Tidwell testified that the defendant did not go through the check-out lane with his mother.

Anita Louise Nevens, the defendant's mother, testified as follows: On February 6, 1999, she took the defendant to Kroger to buy groceries for him. The defendant was a student at Middle Tennessee State University and was returning to school that evening. When they were in the produce department, she told the defendant that she was going to get a drink. She walked to the other side of the store and got two teas, and then she stopped in the pharmacy area to read about vitamins. She eventually found the defendant and gave him a tea. When she finished her tea, she placed the empty bottle in the cart, which was her normal practice. Then when they were on the shampoo aisle, the defendant told her that he found a cheaper jar of jelly than the jar that he had placed in the cart earlier and that he was going to put back the more expensive jar. The defendant then placed the jelly and the tea bottle on a shelf and began showing her some of the items that he had placed in the cart. As they were talking, she realized that she needed to leave soon, and she asked the defendant if he had found the pizza crusts, to which he responded that he had not. She then asked a Kroger employee,

-3-

who was the cashier whom she later paid for the groceries, where the pizza crusts were located. After picking up the pizza crusts, they went to pay for the groceries.

Ms. Nevens testified that when they got to the check-out lane, she sent the defendant to get dishwashing detergent, which he did. She talked to the cashier while he scanned her items, and she told him that she had two teas. She did not see whether the cashier scanned the tea bottle. As she and the defendant were leaving the store, a man in plain clothes identified himself as a policeman and asked her if the defendant was her son. The man, Officer Campbell, told her that the defendant drank a tea and left without paying for it. The defendant then said, "Mom, I thought you paid for that." After a brief discussion outside the store, she and the defendant went to a second-floor office with Officer Campbell and Jason Bunch, the store manager. In the office, she told Mr. Bunch that she had told the cashier she had two teas. She then gave Mr. Bunch her receipt, and he told her it showed that only one tea was purchased. When she asked for the receipt back, he would not give it to her. At some point, Officer Campbell took the defendant to an adjacent room. After some time, she went into that room and asked what they were doing. The defendant said that the officer was trying to get him to sign a statement but that he was not going to sign it because it was incorrect. The defendant handed her the report, and she agreed with the defendant that the statement was incorrect. She told Officer Campbell that the defendant would not sign it.

Ms. Nevens testified that after returning home and discussing the incident with her husband, she and her husband returned to Kroger and talked to Mr. Bunch, who suggested to them that he would take care of the criminal charges. She stated that she, her husband, and the defendant met with an attorney to discuss the possibility of suing Kroger but that they had not filed a lawsuit.

The defendant testified as follows: On February 6, 1999, he went to a basketball game with his father and brothers and then went to the Brentwood Kroger with his mother, who was going to buy him groceries. While he was shopping in the produce section, his mother said she was going to get something to drink. About ten to twelve minutes later, she returned and gave him a tea, which he drank as he shopped. At the end of the shampoo aisle, there was a display with jars of jelly on sale. Because that jelly was cheaper than the one that he had gotten earlier, he placed the more expensive jar of jelly on an empty portion of a shelf, explaining that he did not want to walk to the other side of the store to return the first jelly to the shelf from which he got it. At this time, he also placed his tea bottle on the shelf. He did not hide the tea bottle with the jelly jar or push the tea to the back of the shelf. His mother was with him when he placed these items on the shelf.

The defendant testified that he went through the check-out lane with his mother, although he was not with her the entire time because he went to get dishwashing detergent while the cashier was scanning their groceries. He stated that after they left the store, Officer Campbell stopped them and asked his mother if the defendant was her son. She responded that he was, and then Officer Campbell said that the defendant drank a tea and did not pay for it, at which point he looked at his mother and said, "I thought you had paid for this." He said that he thought his mother had gone through a check-out lane and paid for the tea when she got it because she was gone for ten to twelve minutes from the time she left to get a drink until she gave him the tea.

The defendant testified that he, his mother, Officer Campbell, and Mr. Bunch went to a second-floor office. The defendant said that at some point, Officer Campbell took him into an adjacent room, where he signed a citation. Officer Campbell asked him to sign an incident report, in which Officer Campbell had written that the defendant said he was going to pay for the tea. He refused to sign the report because the statement Officer Campbell had written was not true. Eventually, his mother came into the room and looked at the report, but she did not jerk it from his hands.

On cross-examination, the defendant testified that his first job was at a Kroger store and that it was common for people to eat or drink something as they shopped. He stated that he would not think it suspicious if a person placed an empty bottle on a shelf because he would assume that the person already paid for the item. He said that when he placed the tea bottle on the shelf, he thought that his mother had paid for it, although he admitted that he knew when she drank a beverage while shopping, she usually placed the empty container in the cart and paid for beverage with her other groceries. The defendant stated that he was present at a meeting with his parents and an attorney in which they discussed filing a civil suit against Kroger.

Carolyn Hankins, a neighbor of the Nevens, testified that she had known the Nevens family for more than fifteen years. She said that Ms. Nevens and the defendant were honest and that she had never known either to lie.

The state recalled Jason Richard Bunch and Officer Larry Campbell. Mr. Bunch testified that while they were in the second-floor office, Ms. Nevens commented that the drink only cost $1.09 and that "this was only a misdemeanor." He said that Ms. Nevens asked him to look at the receipt to see if she had paid for two teas but that she never asked him to question the cashier regarding what she told him.

Officer Campbell testified that according to his notes, which he made on the evening of the theft, Ms. Nevens made several comments while in the second-floor office, including that she was a regular customer and would pay for the tea, that the tea was only $1.09, that she took the tea out of the case, and that the offense was only a misdemeanor. He stated that Ms. Nevens also questioned how he knew that the tea was not hers.

Anita Louise Nevens was recalled and testified that she did not make any of the statements that Officer Campbell testified she made. She stated that she did not know the definition of a misdemeanor.

## I. JURY INSTRUCTIONS

The defendant's primary argument concerns the omission of a jury instruction on the mistake of fact defense. He argues that because the evidence fairly raised the mistake of fact issue, the trial court erred by failing to instruct the jury on this defense. The state contends that the evidence did

not fairly raise the defense of mistake of fact, and even if it did, the failure to instruct the jury about it was harmless.

It is well established in Tennessee that the defendant's constitutional right to trial by jury includes having the trial court give a correct and complete charge of the law applicable to the facts of the case. See State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). This means that the defendant has a right to have each issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the trial court. State v. Brown, 836 S.W.2d 530, 553 (Tenn. 1992); see Poe v. State, 370 S.W.2d 488, 491 (Tenn. 1963) (holding that it was the trial court's duty to give "proper jury instructions upon issues fundamental to the defense and essential to a fair trial" even when such instructions were not requested). Ignorance or mistake of fact is a defense to prosecution, and the trial court must instruct the jury on the defense if it is fairly raised by the proof. Tenn. Code Ann. §§ 39-11-203(a), (c), -502. In determining whether a defense is fairly raised by the proof, a trial court should consider the evidence in the light most favorable to the defendant. State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). Moreover, if an instruction is warranted, the court must instruct the jury that any reasonable doubt on the existence of the defense requires acquittal. Tenn. Code Ann. § 39-11-203(d).

Ignorance or mistake of fact is "a defense to prosecution if such ignorance or mistake negates the culpable mental state of the charged offense." Tenn. Code Ann. § 39-11-502(a). In this case, the defendant was charged with theft of property, which a person commits "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

The evidence in this case fairly raised the defense of mistake of fact. The defendant testified that while he was shopping, his mother left him for ten to twelve minutes, leading him to believe that she paid for the tea before she gave it to him. Also, evidence was presented that the defendant was not in the check-out lane when his mother, who testified that she told the cashier to charge her for two teas, paid for the groceries. The defendant and his mother testified that when they were confronted by Officer Campbell outside the store, the defendant said that he thought his mother paid for the tea. If the defendant were mistaken about this fact, this mistake would negate the intent to steal. The jury should have been instructed that any reasonable doubt as to the existence of the defendant's mistake of fact required an acquittal.

The state contends that the failure of the trial court to provide an instruction on mistake of fact was harmless. The state argues that the jury engaged in the same fact-finding analysis that a mistake of fact instruction would have required because the jury was instructed on the affirmative defense of claim of right as well as that the state had to prove the elements of theft, including the mental state, beyond a reasonable doubt. Thus, the state argues, the jury was aware of the defendant's claim that he believed the tea had been paid for, but, nonetheless, to convict the defendant, the jury had to determine beyond a reasonable doubt that the defendant intended to steal the tea.

The error of failing to instruct the jury regarding the mistake of fact defense denied the defendant his constitutional right to trial by jury. See Teel, 793 S.W.2d at 249. Further, due process requires that a criminal defendant be afforded a meaningful opportunity to present a complete defense, which includes the right to have the jury instructed regarding fundamental defenses raised by the evidence. See Connecticut v. Johnson, 460 U.S. 73, 85-88, 103 S. Ct. 969, 976-78 (1983); Barker v. Yukins, 199 F.3d 867, 875-76 (6th Cir. 1999); see also Poe, 370 S.W.2d at 491. Thus, the burden is on the state to show that the error is harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967); State v. Howell, 868 S.W.2d 238, 253 (Tenn. 1993).

In this case, the trial court did not instruct the jury on the mistake of fact defense, which would have included that the state must prove beyond a reasonable doubt that the defendant did not act through a mistake of fact. However, the court did instruct the jury, upon the defendant's trial counsel's request, on the affirmative defense of claim of right – that it was a defense to prosecution if the defendant acted under an honest claim of right to the property or acted in the honest belief that he had the right to obtain or exercise control over the property as he did. Included in the claim of right instruction, however, was the fact that the burden was on the defendant to prove the defense by a preponderance of the evidence. The state's argument that the jury went through the same analysis that it would have gone through had the mistake of fact instruction been given fails to appreciate the difference in the burdens of proof, which is substantial, especially in light of the balanced proof. Moreover, instructing the jury on the elements of theft and that the state had the burden of proving all the elements beyond a reasonable doubt does not render the failure to instruct on mistake of fact harmless. The trial court's instructions did not identify the mistake of fact issue and place it before the jury. Critically, the jury was not instructed that any reasonable doubt as to the existence of the defense of mistake of fact required acquittal. We conclude that the error in failing to instruct the jury on the mistake of fact defense is not harmless beyond a reasonable doubt. Accordingly, we reverse the defendant's conviction and remand the case to the trial court.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant contends that he received the ineffective assistance of counsel at trial because his counsel failed to request an instruction on mistake of fact. In light of the reason for our reversing the conviction, we conclude that this issue is moot. That is, whether we are subsequently affirmed or reversed if a further appeal is sought, the defendant's claim of ineffective assistance of counsel regarding the instruction would avail him nothing further. We need not rule upon a moot issue.

## III. IMPROPER CROSS-EXAMINATION

The defendant contends that the trial court improperly allowed the state to cross-examine him and his mother about whether they had talked to an attorney regarding the possibility of filing a civil suit against Kroger. Ms. Nevens testified that she and her husband met with an attorney but that they had not filed a civil suit. The defendant testified that he was present when his parents talked with an attorney about the possibility of filing a civil suit against Kroger. The defendant argues that this

evidence was irrelevant and prejudicial. The state contends that the trial court properly allowed the cross-examination, finding that such testimony was relevant on the issue of credibility.

The propriety, scope, manner, and control of cross-examination of witnesses rests within the sound discretion of the trial court. Coffee v. State, 188 Tenn. 1, 4, 216 S.W.2d 702, 703 (1948); State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App.1995). The scope of cross-examination extends to "any matter relevant to any issue in the case, including credibility." Tenn. R. Evid. 611(b). Moreover, a party "may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." Tenn. R. Evid. 616.

In State v. Horne, 652 S.W.2d 916 (Tenn. Crim. App. 1983), the trial court did not allow the defendant, who was on trial for aggravated assault, to cross-examine the victim about whether the victim had filed a civil suit against him, finding that the evidence was irrelevant. This court held that the trial court should have allowed the questions, stating that "great latitude is allowed in cross-examination, particularly cross-examinations showing the witness' interest or bias." Id. at 918 (noting that in civil cases, "it is said that the right to show bias or prejudice should only be limited in extraordinary circumstances"). The court cited several treatises to be "in accord that for the purpose of showing interest, or bias, a witness for the prosecution in a criminal case may be questioned as to whether he has brought an action against the accused, based on the acts involved in the criminal case." Id. (citations omitted).

In State v. Russell, 735 S.W.2d 840 (Tenn. Crim. App. 1987), the defendant was on trial for committing aggravated assault by shooting a police officer. The trial court allowed the state to cross-examine the defendant's husband about a civil rights lawsuit that he and the defendant had filed against the sheriff's office. This court held that the trial court "did not err in allowing evidence of a pending lawsuit when it arises out of the same circumstances as the matter before [it] and goes to the issue of bias." Id. at 842; see also Neil P. Cohen et al., Tennessee Law of Evidence §616[4][d], at 6-170 (4th ed. 2000) ("If a witness has a stake in the outcome of the lawsuit, that potential source of bias or prejudice can be explored for impeachment purposes. . . . One example is the witness who is involved in another pending lawsuit based on the same facts at issue in the case in which the witness is testifying.").

In this case, unlike in Horne and Russell, a civil suit was not pending. The state cross-examined defense witnesses about discussing with an attorney the possibility of filing a civil suit against Kroger. While no Tennessee cases address this distinction, courts from other jurisdictions have, and a majority have found that evidence that a witness in a criminal case has contemplated filing a civil suit regarding the matter of the criminal case is admissible to show the witness's possible bias. See, e.g., State v. Arlington, 875 P.2d 307, 316 (Mont. 1994) (stating that allowing evidence that a witness has contemplated filing a civil suit to show the witness's potential bias is the majority view); State v. Guizzotti, 803 P.2d 808, 811 (Wash. Ct. App. 1991) (stating that the majority rule is to allow a witness to be questioned regarding whether he has contemplated filing a civil suit to show the witness's potential bias). See generally, Sullivan v. United States, 404 A.2d

-8-

153, 161 (D.C. Cir. 1979); State v. Milum, 500 A.2d 555, 560-61 (Conn. 1985); Duncan v. City of Birmingham, 384 So. 2d 1232, 1238 (Ala. Crim. App. 1980); Wooten v. State, 464 So. 2d 640, 462 (Fla. Dist. Ct. App. 1985); State v. Liuafi, 623 P.2d 1271, 1274-75 (Haw. Ct. App. 1981); State v. McLemore, 164 P. 161, 163 (Kan. 1917); State v. Doughty, 399 A.2d 1319, 1323 (Me. 1979); People v. Richmond, 192 N.W.2d 372, 374-75 (Mich. Ct. App. 1971); State v. Underwood, 281 N.W.2d 337, 341 (Minn. 1979); State v. Decker, 143 S.W. 544, 544-45 (Mo. Ct. App. 1912); State v. Hart, 80 S.E.2d 901, 902-03 (N.C. 1954); State v. Ferguson, 450 N.E.2d 265, 269-70 (Ohio 1983). We believe that this majority position is consistent with allowing "great latitude . . . in cross-examination, particularly cross-examinations showing the witness' interest or bias." Horne, 652 S.W.2d at 918. We conclude that the trial court did not err in allowing the state to cross-examine the defendant and his mother regarding whether they had talked to an attorney about suing Kroger.

## IV.  IMPROPER CLOSING ARGUMENT

The state concluded its closing argument with the following:  "I ask you to find him guilty of what the grand jury for the State of Tennessee indicted him for, which was the offense of theft under $500." The defendant immediately objected to this argument. The state attempted to respond to the objection before defense counsel had finished talking, resulting in both attorneys talking simultaneously. The trial court, without ruling on the objection, told both attorneys to sit down, and then within a few seconds, it began instructing the jury, stating, "The State of Tennessee versus Michael S. Nevens, ladies and gentlemen of the jury, the defendant, Michael S. Nevens, is charged in Count 1 of the presentment with the offense of theft under $500."

The defendant contends that this episode prejudiced him. He argues that the jury may have inferred guilt from the state's reference to the grand jury indictment. Further, he argues that the statement's prejudicial impact was increased because the trial court failed to sustain his objection and provide a curative instruction. Finally, the defendant argues that when the trial court told the attorneys to sit down immediately following his objection, it demeaned his attorney, and thus, it demeaned him. The state concedes that its reference to the grand jury indictment was improper but contends that any error was harmless.

Initially, we note that the state's improper comment was a very small part of its closing argument. Indeed, the record reflects the comment amounted to one sentence of an argument that lasted more than fifteen minutes. Furthermore, while the defendant argues that the trial court should have ruled on the defendant's objection when it was made, the defendant did not ask the trial court to rule on his objection or make any further comment about it. See T.R.A.P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Moreover, the trial court instructed the jury that the "presentment in this case is the formal written accusation, charging the defendant with the crime. It is not evidence against the defendant and does not create any inference of guilt." Finally, the trial court's order for the attorneys to sit down was directed at both attorneys. Our review of the taped proceedings reveals that the trial court's comment was not loud or disrespectful but was to stop the attorneys from simultaneously

talking about the merits of the defendant's objection. We conclude that the error, if any, regarding the grand jury remark was harmless.

## V. SENTENCING

The defendant contends that his sentence of seven days incarceration is excessive. The state contends that the trial court properly sentenced the defendant.

At the sentencing hearing, Pattie Burns testified that on February 6, 1999, she was in charge of security at the Brentwood Kroger. She stated that after the defendant's trial, she walked past the defendant, who was visibly upset, in the hallway, and the defendant raised his hand toward her and said, "You bitch." She then went immediately to the district attorney's office and filed a formal complaint.

Officer Larry Campbell testified that he was walking with Ms. Burns after the defendant's trial. He said that the defendant raised his fist and said to him, "You punk." Officer Campbell responded, "Don't go there," and then the defendant said to Ms. Burns, "You bitch." He told Ms. Burns to keep walking and that they should report the incident to the district attorney.

Robert Nevens, the defendant's father, testified that the defendant was a good son and knew right from wrong. He acknowledged that the defendant had been arrested for driving while impaired, underage possession of alcohol, underage consumption of alcohol, and simple possession of marijuana, all arising from one incident. He said that the defendant was granted pretrial diversion for these offenses in June 1998, and that the defendant took responsibility for his actions and had not been in trouble since that arrest, although he admitted that the defendant was on probation when the incident at Kroger occurred in February 1999. Mr. Nevens stated that he was in the hallway after the trial and that the defendant did not direct any comments to Ms. Burns or Officer Campbell. He said that when the Kroger employees passed the defendant, they were smiling and laughing, at which point the defendant commented to himself, "Son of a bitch."

Anita Louise Nevens, the defendant's mother, testified that the defendant graduated from high school and was attending Middle Tennessee State University. She said that he had worked part-time during the school years and summers since he was fifteen years old. She stated that the defendant was a gifted artist and had won several awards. She said that the defendant was an average student but that his grades had gotten worse since the Kroger incident.

At the conclusion of the testimony, the trial court had the defendant submit to a drug test. The results were positive for marijuana but negative for cocaine, morphine, and amphetamines. The trial court sentenced the defendant to eleven months, twenty-nine days at seventy-five percent, ordering the sentence to be suspended and served on probation except for seven days. The conditions of the defendant's probation included performing fifty hours of community service, being subjected to random drug screens, and staying out of all Kroger stores. The defendant only contests the seven days incarceration, asserting that this portion of his sentence is excessive.

In reviewing whether the trial court properly sentenced the defendant, we conduct a de novo review of the record with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In misdemeanor sentencing, the trial court is not required to place specific findings on the record. State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). A defendant seeking full probation bears the burden on appeal of showing that the sentence imposed is improper and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In this case, the trial court found no enhancement factors and one mitigating factor, that the defendant's conduct did not cause or threaten serious bodily injury. Tenn. Code Ann. § 40-35-113(1). The trial court then discussed the sentencing purposes and considerations set forth in Tenn. Code Ann. §§ 40-35-102, -103 to determine whether full probation was appropriate. The trial court found the defendant's family support, the amount stolen, and the fact that the defendant was pursuing his college education weighed in favor of full probation. However, the trial court also found several factors weighing against full probation. Relying upon the defendant's comments to the Kroger employees after his trial and his actions during the sentencing hearing, which included him being "called down by his lawyer today in the courtroom," the trial court found that the defendant had shown no remorse. The court further found that the defendant committed the offense while on probation and that the defendant tested positive for marijuana at the sentencing hearing, showing that the defendant had little regard for the laws of the state.

The trial court considered the relevant facts, circumstances, and sentencing principles, and its findings are supported by the record. The defendant committed the offense approximately eight months after being placed on probation. See Tenn. Code Ann. § 40-35-103(1)(C). Also, the defendant showed no remorse for his offense, and he tested positive for marijuana on the date of the sentencing hearing. These circumstances reflect poorly upon the defendant's potential for rehabilitation. See Tenn. Code Ann. § 40-35-103(5). The defendant has not carried his burden in showing that a sentence of a short period of confinement followed by probation is improper.

Based upon the foregoing and the record as a whole, because the trial court failed to instruct the jury on the mistake of fact defense, we reverse the defendant's conviction and remand the case to the trial court.

_____
JOSEPH M. TIPTON, JUDGE