IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 25, 2001, at Knoxville

## STATE OF TENNESSEE v. THOMAS JARED RICHARDSON

**Direct Appeal from the Criminal Court for Davidson County**
**Nos. 99-D-2936-A, 99-B-1424     Steve Dozier, Judge**

_____

**No. M2000-01976-CCA-R3-CD - Filed May 11, 2001**

_____

The defendant, Thomas Jared Richardson, pled guilty to two counts of possession of less than .5 grams of cocaine with the intent to manufacture, deliver, or sell, a Class C felony. See Tenn. Code Ann. § 39-17-417. The trial court imposed concurrent sentences of six years for each count, to be served in the Davidson County Workhouse. The trial court also assessed a fine of $3,500 and ordered the defendant to forfeit his weapon. In this appeal of right, the defendant argues that the trial court should have imposed probation or some other alternative sentence. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Cynthia M. Fort, Nashville, Tennessee, for the appellant, Thomas Jared Richardson.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Kymberly Haas, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On January 18, 1999, the defendant, Thomas Jared Richardson, was driving in Nashville accompanied by two friends, Brandon Grigsby and Randy Reesner. When he thought he recognized a friend traveling in front of them, the defendant flashed his lights. After determining that he had been mistaken, the defendant turned around in a nearby apartment complex and discovered that he was being followed by a security vehicle. The driver of the security vehicle followed for a mile or so before activating the vehicle's emergency lights. The defendant, who initially attempted to drive away, eventually stopped and ran from his vehicle. He yielded only when the security guard drew his weapon. When the police arrived, they discovered more than $4,000 in cash and some 74 grams of cocaine in the defendant's possession.

At the sentencing hearing, the defendant claimed that when he stopped the car, Reesner fled from the backseat, leaving behind large amounts of "dope" and money. The defendant contended that as he then "drove off" in an attempt to elude the security guard, Grigsby tried to throw a gun and the "dope" outside the car window. The defendant acknowledged that he then stopped a second time, took the bag of "dope" from the backseat, and tried to run away.

A month after their first arrest, the defendant and Grigsby were arrested at Midas Auto Service Center after an employee saw Grigsby carrying a .9mm Ruger. The defendant testified that he was unaware that Grisby had a weapon until he put on Grigsby's jacket at the service center and discovered a magazine clip in the pocket. During the ensuing search of the two men, police recovered cocaine, marijuana and some $1,300 in cash.

On May 1, 1999, three months after the second arrest, a vehicle driven by Metropolitan Police Officer John Vincent was almost struck when the defendant ran a stop sign. Officer Vincent broadcast a general description of the defendant's vehicle and a second officer, J. Goodwin, saw the vehicle and activated his emergency lights. According to Officer Goodwin, the defendant drove about a mile before stopping. When the officer asked the defendant and his passenger, Anthony T. McCoy,[1] to step outside of their vehicle, each made a sudden movement, as if to throw something underneath the car. McCoy then dropped a "baggie" of cocaine and a marijuana cigarette on the ground. Officers recovered another marijuana cigarette and a cocaine "baggie" from the area where the defendant had been required to lie on the ground.

While facing charges in each of the three incidents, the defendant entered a negotiated plea of guilt to only two counts of possession with intent to sell less than .5 grams of cocaine.

At the sentencing hearing, the defendant's mother, Sally Solis, testified that the defendant would live with her if the trial court granted him probation. Ms. Solis acknowledged that the defendant had a number of charges and convictions as a juvenile, two of which were drug related. She admitted that when the defendant was 16 years old she had reported him to the police because of his problems with drug abuse. She testified that the defendant had been expelled from high school and had not taken the GED exam.

The defendant conceded that he was in possession of cocaine during the first arrest, but claimed that he was not "dealing" at the time. He maintained that he picked up the drugs as he ran from the vehicle because he was scared and because he did not want the drugs to be discovered in the vehicle, which was registered to a friend. He claimed that both the cocaine and the money belonged to Reesner, and explained that he plead guilty in order to protect him. The defendant also claimed that the $1,084 found on his person during his first arrest came from working and from his mother. The defendant claimed that the .9mm gun clip and the $1,300 in cash that police found in his possession during the second arrest actually belonged to Grigsby. He insisted that the marijuana and cocaine were for his personal use only, but contradicted himself when he contended that he did

---

[1]The record also identifies the defendant's companion as Anthony McCord.

not use cocaine. The defendant maintained that during his third arrest, the cocaine and marijuana that police seized were found near the feet of McCoy. He claimed that the officers' statements to the contrary were untruthful. While acknowledging that he had sold drugs for at least two years, the defendant contended that he was not selling drugs during any of the arrests.

In this appeal, the defendant argues that the trial court erred by sentencing him to six years in the Davidson County Workhouse. He submits that the trial court should have placed him on probation or in community corrections or some other alternative to incarceration.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). Even in cases where the defendant meets the minimum requirements of the Community Corrections Act of 1985, the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following offenders are eligible for Community Corrections:

(1)     Persons who, without this option, would be incarcerated in a correctional institution;

(2)     Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(3)     Persons who are convicted of nonviolent felony offenses;

(4)     Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5)     Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(6)     Persons who do not demonstrate a pattern of committing violent offenses; and

Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

Among the factors applicable to probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285 (Tenn. 1978). The nature and circumstances of the offense may often be so egregious as to preclude the grant of probation. See State v. Poe, 614 S.W.2d 403 (Tenn. Crim. App. 1981). A lack of candor may also militate against a grant of probation. State v. Bunch, 646 S.W.2d 158 (Tenn. 1983).

Moreover, in Ashby, our supreme court encouraged the grant of considerable discretionary authority to our trial courts in matters such as these. 823 S.W.2d at 171; see State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986). "[E]ach case must be bottomed upon its own facts." Taylor, 744 S.W.2d at 922. "It is not the policy or purpose of this court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers." Ashby, 823 S.W.2d at 171.

In denying the defendant's request for alternative sentencing, the trial court ruled as follows:

[Y]ou haven't been candid with the Court about the nature of these offenses and the circumstances surrounding them.
    You try to tiptoe through the questions asked by the State and then, finally, admit you've been selling cocaine for two years, that you didn't know what Grigsby was doing or McCoy was doing or . . . anybody else. You knew exactly what they were doing, and you were part of it.

-4-

Did you get caught in a sale? No. Do you have an explanation in your mind about how you got the thousand dollars and how you got the thirteen-hundred dollars and how you got the clip to a nine-millimeter? Yes. But I don't buy it. . . . [B]ased on the nature of the offense involving the quantity of cocaine, and the number of months you get arrested over, and the number of months that you've acknowledge[d] selling drugs over, this sentence needs to be put into effect.

In our view, the trial court properly considered all relevant facts and circumstances and properly applied the sentencing principles. Thus, the sentence is entitled to a presumption of correctness. The record demonstrates that the defendant lacked both candor and remorse. The lack of remorse may be a basis for the denial of probation. Smith, 735 S.W.2d at 863; State v. Horne, 652 S.W.2d 916, 919 (Tenn. Crim. App. 1983). Moreover, a lack of candor or untruthful testimony reflects poorly upon the defendant's potential for rehabilitation and thus, may be a proper basis for the denial of probation. State v. Jenkins, 733 S.W.2d 528, 535 (Tenn. Crim. App. 1987). Many of the same principles governing the issue of probation are also applicable to requests for Community Corrections. In our view, the facts and circumstances of this case do not warrant either probation or any other alternative sentence.

After entering two pleas of guilt, the defendant basically proclaimed his innocence as to each of the charges. The trial court found that the defendant lacked credibility, failed to accept responsibility for his misdeeds and demonstrated a lack of amenability to rehabilitation. The evidence does not preponderate against that finding. Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE